## A02A0302. KERR-McGEE CORPORATION v. GEORGIA CASUALTY & SURETY COMPANY.
### (568 SE2d 484)

ELDRIDGE, Judge.

Kerr-McGee Corporation f/k/a Kemira, Inc. was sued by Alvin Finch, an employee of Tek-Wal Industrial Contractors, Inc., for injuries suffered while working on the premises of Kerr-McGee when another subcontractor's employee negligently caused him to become exposed to the unintended release of the industrial chemical titanium tetrachloride wholly within Kerr-McGee's plant and without any escape of the industrial chemical into the environment caused or contributed to by Tek-Wal. Kerr-McGee settled with Finch and sued Tek-Wal, among others, for indemnification under its construction contract with Tek-Wal to recover such expenses; however, Tek-Wal filed bankruptcy. Tek-Wal was insured by Georgia Casualty & Surety Company, and Georgia Casualty brought this declaratory judgment action to determine whether or not its total pollution exclusion endorsement applied. This exclusion stated, "[t]his insurance does not apply to '[b]odily injury' or 'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." The exclusion defined pollutant to "mean[ ] any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed." The trial court granted summary judgment to Georgia Casualty, holding that the pollution exclusion applied and that there was no ambiguity in the exclusion. We reverse the grant of summary judgment, because the exclusion under the facts of this case was ambiguous in that "discharge, dispersal, seepage, migration, release or escape of pollutants" is ambiguous by not specifying where such must occur or who has caused it to result in noncovered damages.

The exclusion states that "discharge, dispersal, seepage, migration, release or escape of pollutants at any time" is excluded; this limits where the pollution occurs to atmosphere, soil, or water, which is the external environment to the chemical plant. However, in specifying release to atmosphere, soil, and water, the exclusion does not specify where in regard to a chemical plant: inside the plant, outside the plant, under the plant, or anywhere within the plant in an uncontained state where there is no threat of escape of pollutants into the atmosphere, soil, or water.

This raises the question of whether in the exclusion the chemicals as "pollutants" are discharged, released, etc. when they are contained in mixing vats and troughs as part of the production process or in a transport piping system inside a chemical plant in a con-

trolled state; or whether the chemicals become a "pollutant" when, in an uncontrolled, uncontained, and unregulated state inside a chemical plant, titanium tetrachloride overflows a mixing vat, runs down the vat, and pools on the floor of the plant without escape or threat of escape to atmosphere, soil, or water. Industrial chemicals when used as intended and released from a container may be used in a production process to etch, to strip, to clean, to degrease, to polish, to act as a solvent, to paint, to coat, to act as a mastic, or to surface. At what point in time does a "discharge, dispersal, seepage, migration, release or escape" of industrial chemicals outside a container or containment system occur? How would containment be defined, i.e., used as intended outside a container, contained within the plant, or merely outside its container? For example, carbon tetrachloride, reported in many cases of maintenance slip and fall cases as a common industrial solvent/degreaser, when used on the floor of a restaurant or fast food business to remove food spills, would come within Georgia Casualty's overly broad exclusion language if it caused someone to slip and fall. This definition of the escape of pollutants is overly broad and demonstrates ambiguity that would cause a reasonable person to be unsure of what is excluded and what is covered by insurance.

Titanium tetrachloride, in the state intended by Kerr-McGee within the contained confines of its plant, never escaped or discharged outside the plant into the atmosphere, soil, or water or threatened to do so. Such language as to when a pollutant is not covered causes a reasonable person to be unsure of what appears at first blush to be plain and unambiguous but, upon examination under the facts of this case, is ambiguous.

Ambiguity exists when a contract term or condition is indistinct, uncertain of meaning or expression, and duplicitous. *Taylor v. Estes*, 85 Ga. App. 716, 718 (1) (70 SE2d 82) (1952). Stated another way, "a word or phrase is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one. An ambiguity, then, involves a choice between two or more constructions of the contract." (Citations and punctuation omitted.) *Burden v. Thomas*, 104 Ga. App. 300, 302 (121 SE2d 684) (1961). In construing a contract to ascertain the intent of the parties, the court should give a term or phrase in the contract its ordinary meaning or common signification as defined by dictionaries, because they supply the plain, ordinary, and popular sense unless the words are terms of art. OCGA § 13-2-2 (2); *State Farm Fire &c. Co. v. American Hardware Mut. Ins. Co.*, 224 Ga. App. 789, 792 (3) (482 SE2d 714) (1997); *Henderson v. Henderson*, 152 Ga. App. 846, 847 (1) (264 SE2d 299) (1979). Terms of art or words connected to a particular trade are given the signification attached to them by experts in such art or trade as a rule of construction. *Asa G. Candler, Inc. v. Ga. Theater Co.*, 148 Ga. 188, 193 (5) (96

SE 226) (1918). However, in this case, there was no such special meaning in the policy exclusion, because the insurance contract had not been issued for a chemical processing plant.

In applying the rules of construction to an insurance contract, "the test is not what the insurer intended its words to mean, but rather what a reasonable person in the insured's position would understand them to mean." *Gulf Ins. Co. v. Mathis*, 183 Ga. App. 323, 324 (358 SE2d 850) (1987). "[E]xclusions to [an insurance policy] require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on [the] coverage in clear and explicit terms." (Citations and punctuation omitted.) *Alley v. Great American Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613) (1981). When the language of an insurance contract is ambiguous and subject to more than one reasonable construction, the policy must be construed in the light most favorable to the insured, which provides him coverage. *Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333, 334 (1) (380 SE2d 686) (1989) (involved an earlier sudden pollution exclusion held to be ambiguous); *Alley v. Great American Ins. Co.*, supra at 600. Thus, an exclusion sought to be invoked by the insurer will be liberally construed in favor of the insured and strictly construed against the insurer when it is not clear and unequivocal, as in this case. *First Ga. Ins. Co. v. Goodrum*, 187 Ga. App. 314, 315 (370 SE2d 162) (1988); see also *U. S. Fidelity &c. Co. v. Park 'N Go of Ga.*, 66 F3d 273, 278 (11th Cir. 1995).

> If a policy of insurance is so drawn as to require an interpretation, and is fairly susceptible of two different constructions, the one will be adopted . . . favorable to the insured. Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice.

(Citation and punctuation omitted.) *Davis v. United American Life Ins. Co.*, 215 Ga. 521, 527 (2) (111 SE2d 488) (1959); accord *First Ga. Ins. Co. v. Goodrum*, supra at 315.

In the definition, contained and waste chemical byproducts of manufacturing and chemical processes that are waste in gaseous, liquid, or solid states are pollutants but come within the exclusion only when discharged into atmosphere, soil, and water. Gaseous waste contaminants in the exclusion definition include smoke, vapor, soot, or fumes, which escape into the atmosphere by implication. The

exclusion does not apply to "acids, alkalis, chemicals" which have not escaped into the environment.

The exclusion applies only when pollutants escape outside the containment area of the chemical plant into atmosphere, soil, or water and are not excluded when they have not escaped into the environment outside the physical plant, i.e., above, below, or around the outside of the physical plant. Thus, the exclusion must be given a narrow construction. The exclusion specifically listed as a pollutant thermal irritant and harmful gases, i.e., smoke, vapor, soot, and fumes with particularity, which cannot be contained within the physical plant outside a controlled container system.

The unintentional "discharge, dispersal, seepage, migration, release or escape of pollutants" into atmosphere, soil, or water indicated that the exclusion had no application to a contained location by its choice of verbs, which import a setting free as "unexpected and unintended." *Claussen v. Aetna Cas. &c. Co.*, supra at 336 (2). Thus, to constitute a pollutant to the environment within the exclusion, such release or escape had to be outside of an industrial containment system for chemicals, i.e., released into the environment of atmosphere, soil, or water outside the plant. The very verbs used indicate unintentional transfer of chemical waste from a containment system to the uncontained environment where atmosphere, soil, or water becomes polluted or contaminated. Id. at 336. To the extent that the physical structure of the chemical plant may be designed to contain and prevent any transfer of the chemicals from its containers into the environment, such chemicals have not escaped or threatened to escape into the environment, i.e., atmosphere, soil, or water. Id. at 336. Such constitutes an ambiguity that can only be resolved by the exclusion being restricted to escape or threatened escape of pollutants into the environment outside of the plant, i.e., plant soil, atmosphere surrounding the plant, or water leaving the plant.

The overly broad interpretation of means of excluded pollution as anything taken by the trial court demonstrates the ambiguity of the exclusion, because the exclusion's effect is limitless in application when it should be limited to the environment only. *Enron Oil Trading &c. Co. v. Walbrook Ins. Co.*, 132 F3d 526, 530 (9th Cir. 1997) (intentional acts excluded but negligent and strict liability were within insurance coverage when not involving environment); *American States Ins. Co. v. Koloms*, 177 Ill.2d 473 (687 NE2d 72) (1997) (carbon monoxide released from faulty furnace within commercial building causing injuries not within exclusion as pollutant of environment); *Doerr v. Mobil Oil Corp.*, 774 S2d 119, 127-128 (La. 2000) (exclusion applied to environmental pollution only and not to everything that could come within the definition of a pollutant because too broad).

The Supreme Court of Georgia has held that almost the identical pollution exclusion was ambiguous when it used the phrase "is sudden and accidental" as to method of pollution excluded; this language was removed and replaced with "at any time" under this pollution exclusion. *Claussen v. Aetna Cas. &c. Co.*, supra at 334.

*Truitt Oil &c. Co. v. Ranger Ins. Co.*, 231 Ga. App. 89 (498 SE2d 572) (1998), involved an insured distributor whose outside gasoline tank leaked gasoline which went into the soil, contaminating the environment under the terms of its own policy, which is a clearly excluded means of pollution of soil and ground water. *American States Ins. Co. v. Zippro Constr. Co.*, 216 Ga. App. 499, 500-501 (1) (455 SE2d 133) (1995), involved asbestos fibers, which contaminated the house and environment from old construction material when removed and the insured under the policy was the person causing the contamination of the environment, which also was a clear release and escape into the environment outside the house by removal. *Perkins Hardwood Lumber Co. v. Bituminous Cas. Corp.*, 190 Ga. App. 231 (378 SE2d 407) (1989), involved an outdoor fire negligently caused by the insured, and smoke in the environment obstructed the vision on the road, causing collisions, which also was a clear escape and release into the atmosphere of a pollutant. In each of these cases, the pollution exclusion was unambiguous. However, in none of these cases was the conduct of a third person other than the insured the cause of the environmental pollution, and all these cases involved factual circumstances in which the environment, in fact, was polluted. This case factually and legally is distinguishable from such cases, because first, the insured did not cause the environmental pollution; and second, the chemical discharge never escaped into and polluted the environment. Any discharge remained contained within the chemical plant.

Thus, the release of titanium tetrachloride contained within the production area of the plant failed to come within the exclusion, because it did not escape or threaten to escape into the environment outside the physical plant. Such construction of the contract resolves the ambiguity and affords coverage to the insured, Tek-Wal. *Claussen v. Aetna Cas. &c. Co.*, supra at 338.

The pollution exclusion clause, which was designed to apply to the environmental contamination, is so broad that a reasonable insured would not know what would be excluded under this provision as to cause of pollution, i.e., old lead paint in an apartment, carbon monoxide from a faulty furnace or hot water heater, toxic fumes from a mastic or roofing compound, paint spray, or sulfuric acid spray to list a few chemicals, which insurers have denied coverage under this exclusion in other jurisdictions. The exclusion clause of an insurance contract may be ambiguous in one coverage context and not in

another. *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F3d 34, 37 (2nd Cir. 1995) (death from carbon monoxide from defective apartment heating system not within exclusion because not pollution of environment). By way of example, the pollution exclusion can be ambiguous as to the type of injuries to which it applies, i.e., only cases of environmental contamination. *Bituminous Cas. Corp. v. Advanced Adhesive Technology*, 73 F3d 335, 339 (11th Cir. 1996) (carpet mastic gave off toxic gases in a confined boat cabin space causing death not within exclusion); see also *Claussen v. Aetna Cas. &c. Co.*, supra.

Where the insured did not cause or contribute to the release, the release did not occur on or originate from the insured's property, and the indemnification claim against the insured is not for environmental contamination, the exclusion does not apply. See *Doerr v. Mobil Oil Corp.*, supra at 133-135 (exclusion does not apply when insured neither caused nor contributed to the release of pollution into the environment); *North American Specialty Ins. Co. v. Ga. Gulf Corp.*, 99 FSupp.2d 726, 730-731 (M.D. La. 2000) (third party/independent contractor's employee injured by release of gas in Georgia Gulf's plant by it, exclusion did not apply, because the employer neither caused nor contributed to the release). The purpose of total pollution exclusion was to bar coverage responsibility for government-mandated cleanup under the Superfund for gradual environmental damages of any type. *Claussen v. Aetna Cas. &c. Co.*, supra at 336-337; *North American Specialty Ins. Co. v. Ga. Gulf Corp.*, supra at 730; see also *Doerr v. Mobil Oil Corp.*, supra at 135; *Nautilus Ins. Co. v. Jabar*, 188 F3d 27, 30-31 (1st Cir. 1999) (environmental exclusion too broad to apply to fumes from roofing compound injured worker using it); *Karroll v. Atomergic Chemetals Corp.*, 194 AD2d 715 (600 NYS2d 101) (1993) (environmental exclusion did not apply to worker accidentally sprayed with sulfuric acid); *Sullins v. Allstate Ins. Co.*, 340 Md. 503 (667 A2d 617) (1995) (exclusion did not apply to lead paint in old apartment which harmed a tenant); *A-1 Sandblasting &c. Co. v. Baiden*, 53 Ore. App. 890 (632 P2d 1377) (1981), aff'd, 293 Ore. 17 (643 P2d 1260) (1982) (exclusion did not apply to cars accidentally sprayed with paint while bridge spray-painted). Therefore, no reasonable person would consider the purpose of the exclusion to actually apply to the unique facts of this case. *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, supra at 36. Thus, when the policy is viewed as a whole, it must be determined if there exists any reasonable interpretation that a reasonable person in the insured's position would understand the exclusion to mean in light of the purpose. *Gulf Ins. Co. v. Mathis*, supra at 24; *U. S. Fidelity &c. Co. v. Gillis*, 164 Ga. App. 278, 282 (296 SE2d 253) (1982). Under the policy and facts of this case, a reasonable insured could believe that the exclusion did

not apply when the insured neither caused nor contributed to the pollution, the release did not occur on the insured's property, no environmental contamination occurred or was threatened, and the material was an industrial chemical and not waste. See *Claussen v. Aetna Cas. &c. Co.*, supra at 338. When the ambiguity or lack of clarity is resolved against the insurer as drafter, the exclusion does not apply. Id. at 338.

*Judgment reversed. Smith, P. J., and Ellington, J., concur in judgment only.*

DECIDED MAY 1, 2002 —
RECONSIDERATION DENIED JULY 11, 2002 ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Ellis, Painter, Ratterree & Bart, Ryburn C. Ratterree, King & Spalding, Paul J. Murphy, Michael R. Powers*, for appellant.
*Mabry & McClelland, DeeAnn B. Waller*, for appellee.