S07G1768. REED et al. v. AUTO-OWNERS INSURANCE COMPANY.
(667 SE2d 90)

SEARS, Chief Justice.

This appeal involves the proper construction of a pollution exclusion clause in a commercial general liability ("CGL") policy. A residential tenant sued her landlord for carbon monoxide poisoning allegedly caused by the landlord's failure to keep the rental house in good repair. The landlord tendered the claim to his insurance carrier under his CGL policy. The carrier initially defended the suit but later filed a declaratory judgment action requesting a determination of non-liability. The trial court denied the carrier's motion for summary judgment based on the pollution exclusion clause, and a seven-judge panel of the Court of Appeals reversed on interlocutory appeal. The Court of Appeals held that the pollution exclusion clause in the landlord's CGL policy unambiguously excluded the tenant's claim from coverage.[1] We granted certiorari to decide whether the Court of Appeals erred in its interpretation of the pollution exclusion clause. We agree with the Court of Appeals' judgment and analysis, and we therefore affirm.

1. Leslie Reed sued her landlord, Melvin Waldrop, for carbon monoxide poisoning allegedly caused by Waldrop's failure to maintain the house she was renting from him in good repair.[2] Waldrop tendered the claim to his insurance carrier, Auto-Owners Insurance Company ("Auto-Owners"), under his CGL policy. Auto-Owners assumed Waldrop's defense under a reservation of rights.

On May 11, 2005, Auto-Owners filed a complaint for declaratory judgment in the Butts County Superior Court seeking a declaration

---

[1] *Auto-Owners Ins. Co. v. Reed,* 286 Ga. App. 603, 604 (649 SE2d 843) (2007).

[2] The source of the alleged leak is unclear from the record on appeal.

of non-liability. Auto-Owners filed a motion for summary judgment based on the pollution exclusion clause of the policy, and the trial court denied the motion without explanation. Auto-Owners sought and obtained permission to pursue an interlocutory appeal.

A seven-judge panel of the Court of Appeals reversed. The majority held that a straightforward reading of the pollution exclusion clause, and in particular the provision defining a "[p]ollutant[ ]" as "any solid, liquid, gaseous or thermal irritant or contaminant, including . . . fumes," compelled the conclusion that Reed's claim against Waldrop was excluded from coverage under the CGL policy. Two judges dissented.[3] The dissenters would have held that the pollution exclusion clause in the CGL policy is ambiguous; that one reasonable reading of the clause is that it applies only to what is traditionally considered to be "environmental" pollution; and that, because ambiguous terms in insurance policies must be construed against the insurer, Auto-Owners was not entitled to judgment as a matter of law.

2. Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy.[4] Thus, a carrier may agree to insure against certain risks while declining to insure against others.[5] In construing an insurance policy, we begin, as with any contract, with the text of the contract itself.[6] Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.[7]

Waldrop's CGL policy requires Auto-Owners to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The carrier is also obligated to "defend any 'suit' seeking those damages." It is undisputed that Reed's complaint initiated a "suit" against Waldrop seeking "damages" for "bodily injury" as those terms are initially defined in the CGL policy. However, the policy also provides, under the heading **"Exclusions,"** as follows:

---

[3] *Auto-Owners Ins. Co.*, supra, 286 Ga. App. at 607-614.

[4] *Payne v. Twiggs County Sch. Dist.*, 269 Ga. 361, 363 (496 SE2d 690) (1998); *Continental Cas. Co. v. HSI Fin. Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996).

[5] *Grain Dealers Mut. Ins. Co. v. Pat's Rentals*, 269 Ga. 691, 692 (505 SE2d 729) (1998); *Park 'n Go of Ga., Inc. v. U. S. Fid. & Guar. Co.*, 266 Ga. 787, 791 (471 SE2d 500) (1996).

[6] *Payne*, supra, 269 Ga. at 363. See *Williams v. Fallaize Ins. Agency, Inc.*, 220 Ga. App. 411, 414 (469 SE2d 752) (1996) ("When the language . . . is clear, an insurance policy is interpreted according to its plain language and express terms, just like any other contract.").

[7] *Payne*, supra, 269 Ga. at 363; *Continental Cas. Co.*, supra, 266 Ga. at 262.

This insurance does not apply to . . . "[b]odily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . [a]t or from any premises . . . owned . . . by . . . any insured . . . . Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. . . .

Reed alleges that she suffered "bodily injury" from the "release" of carbon monoxide gas "at . . . [the] premises," i.e., the rental house, "owned . . . by . . . [the] insured," i.e., Waldrop. As all parties recognize, the question thus narrows to whether carbon monoxide gas is a "pollutant" — i.e., matter, in any state, acting as an "irritant or contaminant," including "fumes." We need not consult a plethora of dictionaries and statutes to conclude that it is. After all, the very basis for Reed's lawsuit is her claim that the release of carbon monoxide gas inside the rental house "poison[ed]" her, causing her to suffer difficulty breathing, dizziness, insomnia, vomiting, nausea, headaches, and decreased appetite. Accordingly, we agree with the Court of Appeals that the plain language of the pollution exclusion clause excludes Reed's claim against Waldrop from coverage under the CGL policy.

The dissenting judges in the Court of Appeals reached a contrary conclusion only by first identifying "the purpose" of pollution exclusion clauses generally and then surveying the "historical evolution of the text of the standard exclusion" before turning to the plain language of the pollution exclusion clause in the CGL policy issued to Waldrop by Auto-Owners. Looking through the prism of what one might expect to find based on this previously determined "purpose" and "historical evolution," the dissenters concluded that the pollution exclusion clause *"can"* reasonably be read as being "limited to what is commonly or traditionally considered environmental pollution."[8] Nothing in the text of the pollution exclusion clause supports such a reading. In short, the dissenters' focus on extra-textual sources of interpretation led them to find ambiguity in the pollution exclusion clause where there is none.

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., and Carley, J., who dissent.*

---

[8] *Auto-Owners Ins. Co.*, supra, 286 Ga. App. at 607 (emphasis in original).

HUNSTEIN, Presiding Justice, dissenting.

"A contract of insurance should be strictly construed against the insurer and read in favor of coverage in accordance with the reasonable expectations of the insured. [Cit.]" *Roland v. Ga. Farm Bureau Mut. Ins. Co.*, 265 Ga. 776, 777 (1) (462 SE2d 623) (1995). Thus, where a baldly literal interpretation of the words in an insurance policy would lead to a result no reasonable insured would expect, we have rejected such interpretation. See id. (though plain language of homeowners' policy predicated coverage on condition that subject residence was "the only premises where the named insured or spouse maintains a residence," wife's coverage was effective even after she had moved out of residence upon couple's separation). Whether or not the terms "pollutant," "irritant," or "contaminant" in this context are characterized as ambiguous — which, simply by virtue of the impressive number of reported cases in which courts have struggled to construe these terms, I would posit they are[9] — the bottom line is that a purchaser of commercial general liability insurance would not reasonably expect based on the broadly defined pollution exclusion that injuries caused by carbon monoxide released within the insured's own premises would be excluded from coverage.

Indeed, the interpretation advanced by Auto-Owners and adopted by the majority

> stretches the plain meaning of the policy exclusion. When viewed in isolation, the terms "irritant" and "contaminant" are "virtually boundless, for there is no substance or chemical in existence that would not irritate or damage some person or property."

(Citations and punctuation omitted.) *Regional Bank of Colorado v. St. Paul Fire and Marine Ins. Co.*, 35 F3d 494, 498 (10th Cir. 1994) (carbon monoxide from residential heater not within meaning of pollution exclusion). Take, for example, a scenario in which a malfunctioning dishwasher overflows, flooding the kitchen and warping its floor; is the water, by virtue of its ability to damage the floor, a "contaminant" or "irritant" falling within the pollution exclusion? Under the majority's holding, the answer, absurdly, would seem to be yes.

In short, as construed by the majority, the pollution exclusion

---

[9] The Court of Appeals below identified at least 17 state and federal cases construing similar pollution exclusions, with roughly half cited in favor of the majority's position and half supporting the dissent. See *Auto-Owners Ins. Co. v. Reed*, 286 Ga. App. 603, 606, 608, n. 8 (649 SE2d 843) (2007).

functions as a gaping loophole into which the insurer can seek haven in situations in which no reasonable insured would have envisioned the exclusion to apply. The majority's failure in this instance to "read [the policy] as a layman would read it" and "strictly construe[ the exclusion] against the insurer and in favor of coverage," *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 273 Ga. 710, 712 (1) (544 SE2d 156) (2001), makes for neither good law nor good public policy. Accordingly, I respectfully dissent.

I am authorized to state that Justice Carley joins in this dissent.

DECIDED SEPTEMBER 22, 2008.

*Beck, Owen & Murray, Charles D. Jones, Johnston, Owen & Bullard, William G. Johnston III*, for appellants.
*Talley, French & Kendall, Michael C. Kendall*, for appellee.
*Wiley Rein, William T. Maxson III, Laura Foggan*, amici curiae.