**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1824. SMITH v. GEORGIA FARM BUREAU MUTUAL
    INSURANCE COMPANY.

A14A1825. CHUPP v. GEORGIA FARM BUREAU MUTUAL
    INSURANCE COMPANY.

PHIPPS, Chief Judge.

Amy Smith, individually and as next friend of Tyasia Brown, filed a personal injury action against Bobby Chupp, alleging that Brown, her daughter, suffered severe and permanent injuries as a result of having ingested lead-based paint in the house they rented from Chupp.

Georgia Farm Bureau Mutual Insurance Company ("GFBM"), with which Chupp had a commercial general liability insurance policy on the property, filed a declaratory judgment action against Smith and Chupp, seeking a determination that it was not required to provide coverage for the alleged injuries or to defend Chupp in

the personal injury action because the alleged injuries came within the policy's "[p]ollution exclusion." The trial court granted summary judgment to GFBM in the declaratory judgment action.

In Case No. A14A1824, Smith appeals from the grant of summary judgment in the declaratory judgment action. In Case No. A14A1825, Chupp appeals from the same ruling. For the reasons that follow, we reverse the judgment in both cases.

In her personal injury complaint, Smith alleged that she and her daughter (who was born in 2004) resided as tenants in Chupp's rental house for several years, beginning in 2004; that a health department inspection of the premises in 2007 revealed that the house had been painted with lead-based paint and that deteriorated lead-based paint was present throughout the house; that said paint was cracking, chipping, and peeling; that the child had been exposed repeatedly and continuously over a period of years to high levels of lead from lead paint; that medical tests conducted in 2007 revealed that the child had lead in her bloodstream; that an investigator's report concluded that "the likely primary cause for the [child's] elevated blood lead level is ingestion of leaded paint chips or dust"; that the child's exposure to the lead-based paint during her infancy resulted in debilitating, permanent disabilities; and that Chupp breached his duties to, inter alia, keep the

premises safe by abating the premises of lead paint and to warn Smith of the dangers posed by lead on the premises, the presence of which he had knowledge.

At issue in this case is whether the lead-based paint claims asserted in Smith's personal injury action are excluded from coverage pursuant to the insurance policy's "pollution exclusion." We hold that the claims are not excluded.

Under the "Coverages" section of the policy, Section I, Paragraph 1, Subparagraph (a) provides in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or suit that may result.

Subparagraph (b) pertinently states:

> This insurance applies to "bodily injury" and "property damage" only if:
> (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

The term "[o]ccurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The policy contains a section called "Exclusions." It provides:

This insurance does not apply to:
(f) Pollution
(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants": (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

The policy defines "pollutants" as follows:

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Case No. A14A1824*

1. Smith contends that the trial court erred by granting summary judgment to GMFB because there is no exclusion in the policy which allows GMFB to deny insurance coverage for bodily injury resulting from lead-based paint ingestion. We agree with Smith.

This court reviews "the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in a light most favorable to the nonmoving party, demonstrates any genuine issue of material fact."[1] Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] "[T]he opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom favorably toward the party opposing the motion."[3]

"The cardinal rule of contract construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, [the contract] shall be enforced irrespective of all technical or arbitrary rules of construction."[4] When a policy of insurance is so drawn

---

[1] *Bd. of Comm'rs of Crisp County v. City Comm'rs of City of Cordele*, 315 Ga. App. 696, (727 SE2d 524) (2012) (punctuation and footnote omitted).

[2] *Becton v. Tire King of North Columbus*, 246 Ga. App. 57 (539 SE2d 551) (2000).

[3] *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988) (citations omitted).

[4] OCGA § 13-2-3.

as to require an interpretation, and it is fairly susceptible to two different constructions, the construction to be adopted will be the one most favorable to the insured.[5]

"Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice."[6] Furthermore,

> [i]n construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.[7]

"Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured."[8] Exclusions from coverage in

---

[5] *Western Pac. Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 681 (1) (601 SE2d 363) (2004).

[6] Id. (footnote omitted).

[7] *Bartlett v. American Alliance Ins. Co.*, 206 Ga. App. 252, 255 (2) (424 SE2d 825) (1992) (citations and punctuation omitted).

[8] *Penn-America Ins. Co. v. Disabled American Veterans*, 268 Ga. 564, 565-566 (490 SE2d 374) (1997).

insurance policies require narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on the coverage in clear and explicit terms.[9] "Where the insurer seeks to invoke an exclusion contained in its policy, it has the burden of proving the facts come within the exclusion."[10]

We agree with Smith that lead-based paint is not clearly a "pollutant" as defined by the policy. As set out above, under the policy, a "pollutant" is "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed." The policy's definition of "pollutant" does not include the words "lead," "lead-based paint," or even "paint." Whether lead-based paint is properly classifiable as one of the substances specifically enumerated in the policy's definition of "pollutant" is not clear.

---

[9] *Alley v. Great Am. Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613) (1981).

[10] *Interstate Life & Accident Ins. Co. v. Wilmont*, 123 Ga. App. 337 (1) (180 SE2d 913) (1971) (citations omitted).

In *Kerr-McGee v. Ga. Cas. & Surety Co.*,[11] this court held that a pollution exclusion clause (similar to the clause at issue in this case)[12] was "so broad that a reasonable insured would not know what would be excluded under this provision as to cause of pollution, i.e., old lead paint in an apartment, . . . ."[13] The court held that the exclusion clause did not apply to exclude coverage for injuries resulting from the release of an industrial chemical (titanium tetrachloride), and reversed the grant of declaratory judgment to the insurance carrier.[14]

The issue of whether lead-based paint is considered a "pollutant" for the purposes of a pollution exclusion clause in a liability insurance policy is one of first impression in Georgia. And in other jurisdictions, there is "conflict in judicial opinions regarding whether lead paint is a 'pollutant' under [a] pollution exclusion."[15] We agree with those decisions that have found that a pollution exclusion clause like

---

[11] 256 Ga. App. 458 (568 SE2d 484) (2002) (physical precedent only).

[12] The pollution exclusion provision in *Kerr-McGee* "defined pollutant to 'mean[] any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.'" Id.

[13] Id. at 462 (emphasis supplied).

[14] Id.

[15] *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 516 (667 A2d 617) (1995).

8

the one in this case does not bar coverage for injuries allegedly arising out of the ingestion or inhalation of lead-based paint.[16]

In one such case, *Sullins v. Allstate Ins. Co.*,[17] the Court of Appeals of Maryland held that the terms "contaminants" and "pollutants" in a pollution exclusion clause like the one in the policy at issue here were ambiguous, and must be construed against the insurer (as the drafter of the policy).[18] The court explained that "an insured could reasonably have understood the provision at issue to exclude coverage for

---

[16] See, e.g., *Lefrak Organization, Inc. v. Chubb Custom Ins. Co.*, 942 FSupp. 949, 951, 953 (SDNY 1996) (pollution exclusion clause did not preclude coverage for lead paint poisoning); *Cepeda v. Varveris*, 234 AD2d 497 (651 NYS2d 185) (1996) (same); *G.A. Ins. Co. v. Naimberg Realty Assoc.*, 233 AD2d 363, 364 (650 NYS2d 246) (1996) (same); *General Accident Ins. Co. v. Idbar Realty Corp.*, 163 Misc2d 809, 812-813 (622 NYS2d 417) (1994) (same); *Generali-U.S. Branch v. Caribe Realty Corp.*, 160 Misc2d 1056, 1060-1061 (612 NYS2d 296) (1994) (same); *Atlantic Mut. Ins. Co. v. McFadden,* 413 Mass. 90, 91-92 (595 NE2d 762) (1992) (same); *Porterfield v. Audubon Indem. Co.*, 856 So2d 789, 791, 806 (Ala. 2002); *Ins. Co. of Illinois v. Stringfield*, 292 Ill. App. 3d 471, 472-473, 477 (685 NE2d 980) 1997). Compare, e.g., *Lititz Mutual Ins. Co. v. Steely*, 567 Pa. 98, 108 (785 A2d 975) (Pa. 2001).

[17] Supra.

[18] Id. at 509-510 (III).

injury caused by certain forms of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private residence."[19]

We hold that if GFBM had intended to exclude injuries caused by lead-based paint from coverage in the policy at issue in this case, it was required, as the insurer that drafted the policy, to specifically exclude lead-based paint injuries from coverage.[20] Inasmuch as ambiguities in an insurance contract are strictly construed against the insurer as drafter of the document, and an exclusion from coverage sought to be invoked by the insurer is likewise strictly construed,[21] as in this case, the trial court erred by holding that Smith's claims came within the policy's exclusions.

Notably, the case of *Reed v. Auto-Owners Ins. Co.*,[22] upon which the trial court in this case relied, is inapposite. That case involved the issue of whether carbon

---

[19] Id. at 511 (III); see also *Sphere Drake Ins. Co. v. Y.L. Realty Co.*, 990 FSupp. 240, 243-244 (SDNY1997) (holding that pollution-exclusion clauses like the one in the policy at issue in the present case do not bar coverage in lead-based paint poisoning cases).

[20] See, e.g., *Hartford Underwriter's Ins. Co. v. Turks*, 206 FSupp 968 (ED Mo. 2002) (policy's pollution exclusion specifically defined "pollutant" as "including. . . chemicals, *lead paint*, . . . .").

[21] See *ALEA London Ltd. v. Woodstock*, 286 Ga. App. 572, 576 (2) (649 SE2d 740) (2007).

[22] 284 Ga. 286 (667 SE2d 90) (2008).

monoxide gas released into a home came within the parameters of an excludable pollutant as defined by the insurance policy. There, "a straightforward reading of the pollution exclusion clause, and in particular the provision defining a '[p]ollutant[]' as 'any solid, liquid, gaseous or thermal irritant or contaminant, including . . . fumes,'" compelled the conclusion that the carbon monoxide gas claim came within the pollution exclusion clause.[23]

*Case No. A14A1825*

2. Chupp contends that the court erred by granting summary judgment to GFBM on the issue of coverage because injuries resulting from lead-based paint are covered and the pollution exclusion is ambiguous and to be construed against the insured, and because coverage also existed for Smith's "failure to warn" claim. As discussed in Division 1, the claim was covered and not excluded, and the court erred by granting summary judgment to GFBM.

3. Chupp contends that the court erred by granting summary judgment on GFBM's duty to defend him against Smith's lawsuit. We agree.

Under Georgia law,

_____

[23] Id. at 287-288.

11

[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. We look to the allegations of the complaint to determine whether a claim covered by the policy is asserted. If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. . . .[Furthermore,] [t]he duty to defend is excused only when a complaint unambiguously excludes coverage under the policy.[24]

Inasmuch as there was coverage for the claim and the exclusion did not apply, GFBM had a duty to defend Chupp against Smith's lawsuit.[25] The trial court erred by holding otherwise.

*Judgment reversed in both cases. Ellington, P. J., concurs in the judgment only. McMillian, J., concurs specially*.

---

[24] *Nationwide Mut. Fire Ins. Co. v. Somers*, 264 Ga. App. 421, 424-425 (2) (591 SE2d 430) (2003).

[25] See generally id. at 425 (2).

A14A1824. SMITH v. GEORGIA FARM BUREAU MUTUAL
INSURANCE COMPANY.

A14A1825. CHUPP v. GEORGIA FARM BUREAU MUTUAL
INSURANCE COMPANY.

McMILLIAN, Judge, concurring specially.

I write separately to make it plain that contrary to the majority's conclusion that an insurer must "specifically exclude lead-based paint injuries from coverage," it has never been the law in the state of Georgia that a pollution exclusion clause in an insurance contract must specifically list the exact pollutant in order for the clause to exclude coverage. See, e.g., *Reed v. Auto-Owners Ins. Co.,* 284 Ga. 286 (667 SE2d 90) (2008) (carbon monoxide is a "pollutant" even though pollution exclusion clause only referred to "fumes"); *Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co.,* 231 Ga. App.

89, 91 (498 SE2d 572) (1998) ("In light of the policy language and the usual significance of the words used in the policy, it was unnecessary for the policy to specifically list gasoline as a pollutant."); *American States Ins. Co. v. Zippro Construction Co.*, 216 Ga. App. 499, 501 (1) (455 SE2d 133) (1995) (asbestos falls within definition of pollution exclusion because it is a "known respiratory 'irritant,'" "solid 'contaminant,'" and a "'waste,' within the meaning of the policy and as the asbestos was treated" in that case).

Moreover, I believe that the majority's reliance on *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 516 (667 A2d 617) (1995), for the proposition that "an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain forms of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private residence" is off the mark. In *Reed*, our Supreme Court has already rejected the notion that a similarly worded pollution exclusion clause "'can' reasonably be read as being 'limited to what is commonly or traditionally considered environmental pollution.'" 284 Ga. at 288.

Accordingly, for these and other reasons, I do not agree with all that is said in the majority's opinion, making the majority's decision non-binding physical precedent only pursuant to Court of Appeals Rule 33 (a).

2