[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13489
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-04037-RWS


CENTRO DEVELOPMENT CORPORATION,

                                            Plaintiff-Appellant,

versus

CENTRAL MUTUAL INSURANCE COMPANY,

                                            Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 27, 2018)

Before TJOFLAT, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Centro Development Corporation ("Centro") appeals the dismissal of its complaint against Central Mutual Insurance Company for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6). Centro filed suit against its insurer, Central Mutual, alleging that Central Mutual wrongly denied insurance coverage in reliance on the policy's pollution exclusion. The district court dismissed the complaint, holding that the exclusion was unambiguous and that storm water qualifies as a pollutant under the policy.

We review a district court's grant of a 12(b)(6) motion to dismiss for failure to state a claim *de novo*, "accepting the complaint's allegations as true and construing them in the light most favorable to plaintiff." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).

Under Georgia law, "[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." City of Atlanta v. St. Paul Fire & Marine Ins. Co., 498 S.E.2d 782, 784 (Ga. Ct. App. 1998). "[I]t is only where the complaint sets forth true factual allegations showing no coverage that the suit is one for which liability insurance

2

coverage is not afforded and for which the insurer need not provide a defense."

Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc., 268 Ga. 564, 565 (Ga. 1997).

"Where the contractual language unambiguously governs the factual scenario before the court, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Reed v. Auto-Owners Ins. Co., 284 Ga. 286, 287 (Ga. 2008). In the case of a pollution exclusion, the pollutant at issue need not be explicitly named in the policy for the exclusion to apply. See Ga. Farm Bureau Mut. Ins.Co. v. Smith, 298 Ga. 716, 720 (Ga. 2016). The question in this case is whether storm water is unambiguously considered a "pollutant" under the insurance policy.

The policy at issue in this case defined pollutants as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, soot, fumes, acids, alkalis, chemicals and waste." In Owners Ins.Co. v. Lake Hills Home Owners Ass'n, Inc., 57 F. App'x 415 (11th. Cir. 2002) (unpublished opinion), we held that storm water qualifies as a pollutant under the exact same language that is at issue in this case. Additionally, we have previously held that under the Clean Water Act "[w]hen rain water flows from a site where land disturbing activities have been

conducted, such as grading and clearing," it qualifies as a pollutant. Hughey v. JMS Dev. Corp., 78 F.3d 1523, 1525 n.1 (11th Cir. 1996)[1].

We agree with our prior precedent that the pollution exclusion is unambiguous and that storm water qualifies as a pollutant under the policy. Therefore, the district court's dismissal of Centro's complaint is

**AFFIRMED.**

---

[1] Apparently recognizing the binding precedent holding that storm water flowing from land where land disturbing activities are being conducted is a pollutant, Centro argues that storm water alone (i.e. uncontaminated by silt or other contaminants) is not a pollutant. However, the underlying Meeks litigation (for which Centro demanded that Central Mutual provide a defense) did not involve such uncontaminated storm water. Rather, the underlying Meeks litigation involved storm water that caused silt and other contaminants from the adjacent property on which Centro was conducting land disturbing activities to harm Meeks's property.