**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 3, 2024**

# In the Court of Appeals of Georgia

A23A1529. MASON v. PERMANENT GENERAL ASSURANCE
CORP. et al.

MERCIER, Chief Judge.

In this dispute regarding the proper construction of a refund provision in an automobile insurance policy, Berna Mason appeals the trial court's dismissal on the pleadings of her action against Permanent General Assurance Corporation, Permanent General Assurance Corporation of Ohio, and The General Automobile Insurance Company (collectively "PGAC").[1] Mason contends that the refund provision contains undefined, ambiguous terms and that, when these terms are read together

---

[1] This is the second appearance of this case. We dismissed Mason's previous appeal for failure to follow interlocutory appeal procedures, as PGAC's counterclaim for abusive litigation remained pending at the time. See Case No. A22A1690 (decided August 19, 2022). Following that dismissal, PGAC voluntarily dismissed its counterclaim, and the present appeal followed.

and interpreted in her favor, the facts show that PGAC failed to issue a full refund to Mason following her early cancellation of the policy. For the reasons set forth below, we must reverse the trial court on this issue, and we must also remand this case with direction for the trial court to address an alternative claim for restitution made by Mason.

> Our standard of review is well settled.

> On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action. For purposes of [such a] motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts.

*Arbor Mgmt. Svcs. v. Hendrix*, 364 Ga. App. 758, 765 (2) (875 SE2d 392) (2022) (citation and punctuation omitted). See also *BCM Constr. Group, LLC v. Williams*, 353 Ga. App. 811, 811-812 (840 SE2d 51) (2020).

The record shows that, on July 17, 2020, Mason filed the present action, alleging that PGAC had imposed an unlawful penalty on her refund by retaining a "Short Rate Cancel Fee." As set forth in her pleadings, Mason purchased an

automobile insurance policy from PGAC on March 3, 2020. The full term for Mason's policy was six months, from March 3, 2020 to September 3, 2020, a total of 184 days. As stated in the contract, the "Total Premium Due" was $1,374.00, an amount comprised of a $1,349.00 "Total Full Premium" plus a $25.00 "Policy Fee." At the time she purchased the policy, Mason paid $680.00 as a down payment/installment on the premium, and the remaining balance ($694 plus a $10 "installment fee") was due to be paid on May 3, 2020.

On March 20, 2020, seventeen days after the policy took effect, Mason, on her own accord, chose to cancel the policy. At this point, the refund provision of the insurance contract was triggered. It provides:

> 3. Premium Refund Upon Cancellation:
> a. If the policy cancels, the **named insured** may be entitled to a refund of unearned premium.
> b. If this policy is cancelled by **us** for any reason, other than **failure to pay premium**, any refund due will be computed on a daily pro-rata basis, and subject to any fully-earned fees.
> c. If this policy is cancelled at your request or due to **failure to pay premium**, any refund due will be calculated at a 90% of pro-rata basis, and subject to any fully-earned fees.
> d. **Our** making or offering of a refund: (1) Is not a notice or condition of cancellation; and (2) Will not affect the effective date of any cancellation.
> e. All policy fees are fully earned on the effective date of the policy.

(Emphasis in original.) PGAC issued a $428.92 refund to Mason, based on its interpretation of this refund provision. Mason, however, interpreted the same provision differently and contends that she should have received a refund of $498.32. Each party's interpretation of the policy terms and calculation of the refund will be set forth in turn.[2]

To reach its refund figure, PGAC first calculated the "pro-rata" amount of what it considered to be the "unearned premium" by dividing the number of days remaining in the policy (167) by the number of days in the full policy term (184) to arrive at a pro-rated factor of 0.9076 (167 ÷ 184 = 0.9076). PGAC next applied this pro-rated factor to the policy's "Total Premium" of $1,349 to calculate an "unearned premium" in the amount of approximately $1,225 (0.9076 x 1,349 = 1,225). In addition, PGAC applied the 0.9076 pro-rata factor to the policy fee to determine an unearned policy fee of $22.69 (0.9076 x 25 = 22.69). PGAC added the unearned amounts for a total unearned premium of $1,247.69 (1,225 + 22.69). PGAC then multiplied this total "unearned premium" by a "90% of pro-rata basis" resulting in $1,122.92 (0.9 x 1,247.69 = 1,122.92). This amount, according to PGAC, reflects the

_____

[2] We note that the contract, itself, is silent with regard to the exact manner in which the refund must be calculated.

reduction of "unearned premium" by a 10% short-rate cancellation fee of $124.78 triggered by Mason's cancellation.[3] PGAC next subtracted Mason's outstanding balance of $694.00 (waiving the $10 installment fee) from $1,122.92, the "90% of pro-rata basis" of "unearned premium," yielding a refund of $428.92 (1,122.92 – 694 = 428.92).

Mason's interpretation of the refund provision differs sharply. Mason contends that the refund of "unearned premium" must be calculated from the amount of premium Mason had *previously paid* to PGAC. In other words, Mason interprets the policy to provide that, at worst, her refund would include a 10% charge against the unearned premium that she had previously paid to PGAC and was still held by PGAC at cancellation. In essence, she maintains that it is illogical for PGAC to argue that money never paid by Mason could be "refunded" to her or considered in the calculation of a refund.

Therefore, for her calculation, Mason maintains that, based on a daily pro-rata basis, the amount of the previously paid premium that remained unearned at the time

_____

[3] At the time she purchased the insurance, Mason signed an acknowledgment that "cancellation by my request will be calculated on a short-rate basis[.]"

of her cancellation and was subject to be refunded was $553.69.[4] This amount is obtained by subtracting the amount of premium owed at the time of cancellation from the total pro-rata unearned premium and fees ($1,247.69 - $694 = $553.69). Next, Mason reduces the refundable amount by 10% (the short-rate cancellation fee), and arrives at a final refund amount of approximately $498.

1. Mason first contends that the trial court erred by finding that her interpretation of the contract's refund provision was not reasonable. We agree.

In order to consider the propriety of the parties' differing interpretations of the insurance policy, we must employ the standard rules of construction.

> As with any contract, in construing the terms of an insurance policy, we look first to the text of the policy itself. Words used in the policy are given their "usual and common" meaning, see OCGA § 13-2-2 (2), and the policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. Where the contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured. This is so because Georgia law permits an insurance company to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, thus companies are free to insure against certain risks while excluding others. However, when a policy provision is susceptible to more than one meaning, even if each meaning is logical and reasonable, the provision is ambiguous and,

---

[4] Mason took this figure from PGAC's response to her request for admissions.

pursuant to OCGA § 13-2-2 (5), will be construed strictly against the insurer/drafter and in favor of the insured.

*Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 719 (784 SE2d 422) (2016)

(citations and punctuation omitted). Moreover,

> [t]here is a low threshold for establishing ambiguity in an insurance policy. "Ambiguity in an insurance contract is duplicity, indistinctiveness, uncertainty of meaning of expression, and words or phrases which cause uncertainty of meaning and may be fairly construed in more than one way." *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 249 Ga. App. 322 (548 SE2d 67) (2001).

*St. Paul Mercury Ins. Co. v. F.D.I.C.*, 774 F3d 702, 709 (IV) (B) (11th Cir. 2014).

Here, the impetus for the disagreement between the parties is the meaning of two terms: "unearned premium" and "refund." With regard to "unearned premium," that term is never fully defined by the contract, although the contract does indicate that "premium" refers to $1,349. The question then becomes whether the addition of the modifier "unearned" and the use of the term "refund" may be reasonably interpreted to mean that the amount of "unearned premium" could be intended to be calculated from some other amount than $1,349 (as well as applicable fees). In common usage, "unearned" has been defined to mean "not gained by labor, service, or skill." Merriam-Webster Online Dictionary, http://www.merriam-

webster.com/dictionary/unearned. It has also been commonly defined as "earned or obtained without having been worked for." http://dictionary.cambridge.org/us/dictionary/english/unearned. And, in simplest terms, "premium" is defined as "the consideration paid for a contract of insurance." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/premium. "Unearned premium" has also been given the following common meaning: "the share of a total insurance premium applicable to the unexpired portion of a policy term." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/unearned%20premium. At this point in the analysis, then, PGAC's interpretation of the contract is fully supported and reasonable.

But matters are complicated by the fact that the contract calls for PGAC to "refund" the "unearned premium."[5] In common usage, the verb "refund" has been defined as "to give or put back" or "to return (money) in restitution, repayment, or balancing of accounts." Merriam-Webster Online Dictionary, http://www.merriam-

---

[5] The use of the term "refund" may be an inadvertent holdover from more traditional insurance contracts in which the premium is paid in whole at the beginning of the contract term, not in installments.

webster.com/dictionary/refund. The Cambridge Online Dictionary similarly defines it as "to pay back money received or spent[,]" Cambridge Dictionary Online, http://dictionary.cambridge.org/us/dictionary/english/refund, and Dictionary.com defines the term as "to give back or restore (especially money); repay" or "to make repayment to; reimburse[.]" Dictionary.com, http://dictionary.com/browse/refund. Inherent in all of these common definitions is the premise that a refund, especially in a monetary sense, is comprised of funds *that have already been paid*. Taken together, a "refund of unearned premium" could be commonly understood to mean "the repayment of the consideration previously paid for the insurance contract that has not yet been earned." Given this possible meaning, Mason's interpretation of the contract must *also* be considered to be a reasonable alternative. In other words, because "refund" commonly refers to money previously paid, Mason could reasonably believe that, upon cancellation, her refund would be calculated based only on the amount of premium she had already paid to PGAC. *Smith*, 298 Ga. at 719.[6]

---

[6] We note that at least one statutory provision provides some support that "unearned premium" may be reasonably understood to have a meaning other than that proposed by PGAC. OCGA § 33-24-44 (c) (1) provides: "Any unearned premium *which has been paid* by the insured shall be refunded to the insured on a pro rata basis as provided in this Code section." (Emphasis supplied.)

9

Though PGAC maintains that its interpretation of "unearned premium," as it is commonly defined *in the insurance industry*, supports its calculations, the result of this opinion does not change. An insurance contract must be interpreted from the perspective of a layperson, and, if a provision in the insurance contract is susceptible to more than one reasonable interpretation, the provision should be construed against the insurer. *Cincinnati Ins. Co. v. Magnolia Estates, Inc.*, 286 Ga. App. 183, 185 (648 SE2d 498) (2007).[7] Here, given the fact that the contract neither defines all necessary terms nor sets forth a clear explanation of the manner in which "refunds" are calculated, the policy language must be considered to be ambiguous.[8] For this reason, the trial court erred by construing the contract provision in this case solely in favor of PGAC, and we reverse the trial court's ruling that holds otherwise.

2. Mason also contends that the trial court erred by dismissing her complaint because she made a viable alternative claim for restitution, based on an argument that the 10% short-term cancellation fee was an unlawful penalty. As Mason concedes,

---

[7] Mason cites insurance industry sources to support her argument, but these sources do not bear on our analysis for the same reason.

[8] We note that the United States District Court for the Southern District of Florida has reached a similar conclusion. See *Connor et al. v. Permanent General Assurance Corp.*, 2022 WL 1642843 (S.D. Fla. 2022).

however, the trial court's order dismissing her action does not address this claim. There is, if anything, only an implicit rejection that is presently insufficient for our consideration. "[W]e are a court of review, not of first view." *Parnell v. Sherman & Hemstreet*, 364 Ga. App. 205, 212 (2) (a) (874 SE2d 394) (2022) (citation omitted). As a result, we must vacate the trial court's order to the extent that it may be deemed to implicitly rule on Mason's restitution claim and remand the case so that the trial may properly consider, in the first instance, that particular claim. See *Helton v. United Svcs. Automobile Assn.*, 354 Ga. App. 208, 212-214 (2) (840 SE2d 692) (2020).

3. Finally, Mason argues that the trial court erred by finding that the provisions of OCGA § 33-24-44 are inapplicable to her claim. The trial court, however, ruled correctly in this regard because this statutory provision explicitly applies to cancellations made "by the insurer or its agent duly authorized by the insurer[.]" OCGA § 33-24-44 (a). Here, Mason canceled the contract, not PGAC, and cancellation by the insured is covered by OCGA § 33-24-44.1, which contains no provision indicating an impropriety with the cancellation procedure set forth in Mason's insurance policy. See OCGA § 33-24-44.1 (e) ("an insurance policy which

by its terms may be canceled by the insured shall be canceled in accordance with this

Code section.").

*Judgment reversed in part, vacated in part, and case remanded with direction. Miller, P. J., and Hodges, J., concur.*