**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2017**

# In the Court of Appeals of Georgia

A16A1999. KEY v. GEORGIA DEPARTMENT OF
   ADMINISTRATIVE SERVICES.

REESE, Judge.

Ramie Key, a state inmate who obtained a consent judgment against a former correctional officer, filed an action for a declaratory judgment after the Georgia Department of Administrative Services ("DOAS") refused to indemnify the officer. Key appeals from the trial court's order granting DOAS's motion to dismiss the complaint. For the reasons set forth, infra, we affirm the trial court's judgment.

According to the complaint, the officer subjected Key to excessive force while in the course of performing his official duties and, in so doing, violated Key's constitutional rights. The officer was criminally charged with aggravated battery[1] and

---

[1] See OCGA § 16-5-24 (a).

violation of oath by public officer,[2] and he entered a plea under the First Offender Act[3] and *North Carolina v. Alford*.[4] Key filed a federal civil rights lawsuit against the officer, alleging that the officer used excessive force against him while performing his official duties. The district court entered a consent judgment in favor of Key against the officer in the amount of $300,000.

Key demanded payment from DOAS under its general liability agreement, and filed the underlying complaint after DOAS denied coverage. The general liability agreement, attached to the complaint, stated that it was issued pursuant to the authority granted by OCGA § 45-9-1 et seq., to provide coverage to employees of participating state departments.

The general liability agreement excluded from coverage:

> Claims for "damages" resulting from any dishonest, fraudulent or criminal act or omission of any Covered Party which forms the basis of a criminal conviction, whether by verdict, plea of guilty or plea of nolo contendere including any criminal conviction for which first-offender treatment is afforded, regardless of the specific offense for which a

---

[2] See OCGA § 16-10-1.

[3] See OCGA § 42-8-60.

[4] 400 U. S. 25, 37 (91 SCt 160, 27 LE2d 162) (1970).

2

criminal conviction is obtained or the theory of civil liability asserted against the Covered Party.

The trial court granted DOAS's motion to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. Specifically, it found that the general liability agreement unambiguously excluded from coverage the officer's conduct because the aggravated battery, for which he was criminally convicted, formed the basis for the civil judgment. Key appeals from this order.

We review a trial court's ruling on a motion to dismiss de novo.[5] "Our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts."[6] With these guiding principles in mind, we turn now to Key's specific claims of error.

---

[5] *Sanders v. Trinity Universal Ins. Co.*, 285 Ga. App. 705, 706 (647 SE2d 388) (2007).

[6] Id. (punctuation and footnote omitted).

1. Key argues that the trial court erred when it found that the "criminal acts" exclusion in the insurance policy was not ambiguous, contending that the exclusion was subject to more than one interpretation.

"In construing an insurance policy, we begin, as with any contract, with the text of the contract itself."[7]

> Words used in the policy are given their usual and common meaning, and the policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. Where the contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured. . . . However, when a policy provision is susceptible to more than one meaning, even if each meaning is logical and reasonable, the provision is ambiguous and, pursuant to OCGA § 13-2-2 (5),[8] will be construed strictly against the insurer/drafter and in favor of the insured.[9]

---

[7] *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2) (667 SE2d 90) (2008).

[8] OCGA § 13-2-2 provides in part: "The following rules, among others, shall be used in arriving at the true interpretation of contracts: . . . (5) If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred[.]"

[9] *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 719 (784 SE2d 422) (2016) (citations and punctuation omitted).

4

(a) Key contends that the exclusion could be interpreted not to apply to criminal convictions resulting from an *Alford*[10] plea, which, unlike a traditional plea of guilty, carries a protestation of innocence.

Key misconstrues the nature of an *Alford* guilty plea, also known as a "best interests" guilty plea,[11] by which a defendant may plead guilty while also claiming his innocence or simply electing to remain silent.[12] In *Alford*, "even though [the defendant] claimed his innocence, the trial judge could accept his guilty plea [as knowing and voluntary] in light of the strong evidence against him and the circumstances showing he understood the plea was in his best interest."[13] Such "best interests" typically include avoiding the risks of trial and a harsher sentence.[14]

---

[10] See *Alford*, 400 U. S. at 37 ("An individual accused of [committing a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

[11] See *Brower v. State*, 230 Ga. App. 125 (495 SE2d 600) (1998).

[12] See *Crowe v. State*, 265 Ga. 582, 585-586 (4) (458 SE2d 799) (1995).

[13] *Brower*, 230 Ga. App. at 125 (citing *Alford*, 400 U. S. at 38).

[14] See id. at 125-126 (1).

5

Regardless of the defendant's reason for pleading guilty, however, an *Alford* plea is still a guilty plea.[15]

Here, the plain language of the criminal acts exclusion applies to conduct that formed the basis of "a criminal conviction, whether by verdict, *plea of guilty* or plea of nolo contendere including any criminal conviction for which first-offender treatment is afforded."[16] Thus, the provision explicitly and unambiguously encompasses *all* guilty pleas, including those entered pursuant to *Alford*. "Where the contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured."[17] It follows that this alleged error lacks merit.

(b) Key argues in his appellate brief that the exclusion could be interpreted to exclude only claims for damages that both result from a "dishonest, fraudulent or criminal act or omission" *and* "form[] the basis of a criminal conviction."[18]

---

[15] See *Williams v. State*, 337 Ga. App. 381, 388-389 (4) (787 SE2d 333) (2016).

[16] (Emphasis supplied.)

[17] *Ga. Farm Bureau Mut. Ins.*, 298 Ga. at 719 (citations and punctuation omitted).

[18] (Alteration in original).

6

The exclusion provides in part: "Claims for 'damages' resulting from any dishonest, fraudulent or criminal act or omission of any Covered Party which forms the basis of a criminal conviction, . . . regardless of the specific offense for which a criminal conviction is obtained or the theory of civil liability asserted against the Covered Party."

We disagree that the exclusion is ambiguous. Key's suggested interpretation conflicts with generally recognized rules of grammar and construction.[19] Here, Key's interpretation ignores the rule of the last antecedent.[20] And, as Key appears to understand based on his omission of the letter "s" from the word "forms" in his brief, the use of the verb "forms" indicates the subject is singular (i.e., "any dishonest, fraudulent or criminal act or omission"), not plural (i.e., "Claims for damages").[21]

---

[19] *Wilkes v. Fraser*, 324 Ga. App. 642, 648 (751 SE2d 455) (2013) (declining to construe unambiguous language in a deed).

[20] See *Deal v. Coleman*, 294 Ga. 170, 174 (1) (a) (751 SE2d 337) (2013) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.") (citation and punctuation omitted).

[21] See, e.g., *Bradley v. Bradley*, 156 Ga. 525, 529-530 (119 SE 639) (1923) (interpreting provision in will applying "[w]hen *each* of the *children* of my three sons *reach* 21 years" to mean when "all" of the children reached 21 years) (emphasis supplied).

More importantly, Key's suggested interpretation would have the effect of reading the exclusion entirely out of the policy. Such a construction is to be avoided.[22] Key has provided no example of a situation where a "claim[] for damages" could both "result[] from any dishonest, fraudulent or criminal act or omission" and also "form[] the basis of a criminal conviction." We agree with Key that a defendant could find himself facing a parallel civil trial and criminal prosecution resulting from the same *conduct*, but that proposition does not support Key's suggested reading of the provision, that the exclusion applies only when the *claim* for damages forms the basis of the criminal conviction.

(c) Key contends that DOAS's interpretation contradicts its stated purpose (discouraging criminal activity), arguing that his interpretation would cover all criminal acts and not simply those that result in a conviction. Because the policy is unambiguous, however, no construction is authorized or necessary.[23]

---

[22] See *R & G Investments & Holdings v. American Family Ins. Co.*, 337 Ga. App. 588, 593 (2) (787 SE2d 765) (2016) ("The construction of an insurance contract that renders a provision mere surplusage clearly should be avoided under our rules of construction . . . .") (citation omitted).

[23] *Ga. Farm Bureau Mut. Ins. Co.*, 298 Ga. at 719.

2. Key argues that the criminal acts exclusion is unenforceable because it violates public policy. According to Key, because the insurance coverage was compulsory, the intent must have been to protect some third party rather than just the insured. Key adds that, because the insurance policy was paid for with state funds, it necessarily follows that the intent in providing such coverage was to compensate members of the public who were harmed by the conduct of the insured.

OCGA § 13-8-2 (a) provides that "[a] contract that is against the policy of the law cannot be enforced."[24] However, "contracts will not be avoided by the courts as against public policy, except where the case is free from doubt and where an injury to the public interest clearly appears. [T]he courts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free

---

[24] See OCGA § 13-8-2 (giving examples of contracts deemed void as against public policy).

from doubt."[25] The General Assembly is the "ultimate arbiter of Georgia public policy."[26]

This is not a case free from doubt, where an injury to the public interest clearly appears. Instead, the legislature's stated intent in Chapter 9 of Title 45 of the Code, "Insuring and Indemnification of Public Officers and Employees," was to protect state employees against personal liability based on their conduct while performing their jobs.[27] In other words, the policy was not to compensate victims of criminal conduct by state employees. We thus reject Key's argument that general language in the

---

[25] *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981) (holding that it was against state policy to allow a licensed dentist to rely on a patient's contractual release that purported to relieve him of his duty to exercise a reasonable degree of skill and care during treatment) (citations and punctuation omitted).

[26] *Woodcraft by MacDonald v. Ga. Cas. & Sur. Co.*, 293 Ga. 9, 11 (743 SE2d 373) (2013).

[27] See, e.g., OCGA § 45-9-1 (a) ("In addition to any other compensation which may be paid to an officer, official, or employee of any agency [or] department . . . of this state, each such agency [or] department . . . is authorized, in its discretion, to purchase policies of liability insurance or contracts of indemnity or to formulate sound programs of self-insurance . . . , insuring or indemnifying such officers, officials, or employees to the extent that they are not immune from liability against personal liability for damages arising out of the performance of their duties or in any way connected therewith.").

10

Georgia Constitution[28] indicates an intent contrary to the provision excluding coverage for damages resulting from a state employee's criminal acts.[29] Consequently, the trial court did not err in dismissing Key's complaint.

*Judgment affirmed. Dillard, P. J., and Bethel, J., concur.*

---

[28] See Ga. Const. of 1983, Art. I, Sec. II, Par. I ("Public officers are the trustees and servants of the people and are at all times amenable to them.").

[29] See *Emory Univ.*, 248 Ga. at 393.