**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 15, 2024**

# In the Court of Appeals of Georgia

A24A0284.  FREY  et  al.  v.  NATIONWIDE  MUTUAL INSURANCE COMPANY.

BARNES, Presiding Judge.

William Michael Frey was fatally injured in an automobile accident when his motorcycle was struck by another vehicle. His widow, Irish Angela Frey, individually and as executrix of his estate, sued Nationwide Mutual Insurance Company, contending that a commercial general liability insurance policy that Nationwide issued to the other driver provided coverage for the accident.[1] Nationwide moved for judgment on the pleadings, contending that the insurance policy clearly and unambiguously excluded coverage for the automobile accident. The trial court agreed with Nationwide and entered a final order granting the motion. Irish now appeals,

---

[1] For clarity, we will refer to the Freys by their first names.

asserting that the trial court misconstrued the insurance policy's automobile exclusion. For the reasons discussed below, we affirm.

> On appeal from a grant of judgment on the pleadings, we conduct a de novo review of the trial court's order to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. For purposes of the motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts. Moreover, in considering a motion for judgment on the pleadings, a trial court may consider exhibits attached to and incorporated into the pleadings, including exhibits attached to the complaint or the answer.

(Citation and punctuation omitted.) *Schumacher v. City of Roswell*, 344 Ga. App. 135, 138 (809 SE2d 262) (2017).

Guided by the aforementioned principles, we turn to the facts alleged in Irish's complaint as amended and in the exhibits attached thereto and to the answer. On the evening of June 4, 2017, Michael C. Jesperson, who allegedly had been drinking, was driving his pickup truck down a state highway when he attempted to make a left turn into the path of a funeral procession. While attempting the left turn, Jesperson struck

a motorcycle driven by William, who died as a result of the injuries he sustained. Following the accident, Irish, individually and as executrix of William's estate, brought a personal injury and wrongful death action against Jesperson. After a trial, the jury returned a verdict finding Jesperson liable for the accident and awarding $1,655,647 in damages to Irish. Based on a limited liability release agreement, the judgment entered on the verdict specified that it was "only enforceable against any remaining liability insurance and/or underinsured motorist insurance coverage which provide[d] coverage for the claims contained within [the] case."

At the time of the accident, Jesperson had an automobile insurance policy with State Farm Mutual Automobile Insurance, and he had a commercial general liability insurance policy with Nationwide (the "CGL Policy"). William had insurance policies with Liberty Mutual Fire Insurance Company and Progressive Insurance Company that provided uninsured motorist ("UM") coverage. Irish received insurance proceeds from William's two UM carriers[2] and from Jesperson's automobile insurance carrier, State Farm. However, Nationwide disputed whether

---

[2] A dispute between Irish and Liberty Mutual over the amount of UM coverage was the subject of this Court's opinion in *Frey v. Jesperson*, 366 Ga. App. 488 (883 SE2d 419) (2023). The issues addressed in that opinion are not pertinent to this appeal.

there was coverage for the automobile accident under Jesperson's CGL Policy and declined to pay out any insurance proceeds.

Jesperson assigned any rights he might have under his CGL Policy to Irish. Based on that assignment, Irish commenced the present suit against Nationwide, seeking a declaratory judgment that the CGL Policy covered the automobile accident and that no policy exclusions applied. Irish also sought to recover damages from Nationwide for the remaining unpaid amount of the judgment entered against Jesperson in the wrongful death suit, plus interest. Nationwide answered, denying that there was insurance coverage for the automobile accident, and attached a copy of the CGL Policy as an exhibit.

Nationwide subsequently moved for judgment on the pleadings, contending that the CGL Policy excluded coverage for any bodily injury that arose out of use of the insured's (i.e., Jesperson's) automobile, such that all of Irish's claims failed as a matter of law. In response to the motion, Irish argued that the automobile exclusion reasonably could be construed more narrowly as only applying when the insured's automobile was used by or entrusted to a third party, and that any ambiguity in the contractual language should be construed in her favor. The trial court rejected Irish's

argument, concluding that the CGL Policy unambiguously excluded coverage under the facts as alleged in this case. As a result, the trial court granted Nationwide's motion for judgment on the pleadings, and this appeal followed in which Irish contends that the court misconstrued the automobile exclusion.

"Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy," and "a carrier may agree to insure against certain risks while declining to insure against others." (Citation and punctuation omitted.) *H. J. Russell & Co. v. Landmark American Ins. Co.*, 369 Ga. App. 6, 7 (891 SE2d 531) (2023). It is well-established that

insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. Thus, when faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. As this Court has explained, an ambiguity is duplicity, indistinctness, or an uncertainty of meaning or expression, and a word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one. Where a term of a policy of insurance is susceptible to two or more reasonable constructions, and the resulting ambiguity cannot be resolved, the term will be strictly construed against the insurer as the drafter and in favor of the insured. If a policy exclusion is unambiguous, however, it

must be given effect even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended. Whether ambiguity exists in a contract is a question of law for a trial court.

(Citations and punctuation omitted.) *Sharma v. City of Alpharetta*, 361 Ga. App. 692, 695 (865 SE2d 287) (2021). Guided by these principles, we turn to the CGL Policy.

The CGL Policy attached to Nationwide's answer identifies the named insured as Jesperson "dba Mike the Glass Guy," lists his business as "custom glass work," and provides $1,000,000 in insurance coverage per occurrence. The CGL Policy specifies that Nationwide "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," but it includes an exclusion for "Aircraft, Auto or Watercraft" that provides in part:

> This insurance does not apply to: . . . "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation[.]

(the "Automobile Exclusion"). "Auto" is defined in part as "[a] land motor vehicle . . . designed for travel on public roads."

The parties' interpretive dispute centers on the circumstances under which use of the insured's automobile excludes coverage under the CGL Policy. Nationwide argues that the Automobile Exclusion unambiguously excludes coverage for bodily injury arising out of the use of the insured's automobile, irrespective of whether the automobile is used by the insured or someone else. In contrast, Irish argues that the Automobile Exclusion is ambiguous and reasonably can be construed in her favor as excluding coverage only when the insured's automobile is used by or entrusted to someone other than the insured.

We conclude that the Automobile Exclusion is susceptible of only one reasonable construction, and it is the one advanced by Nationwide. By its plain language, the Automobile Exclusion excludes coverage under the CGL Policy for bodily injury "arising out of the . . . use . . . of any . . . auto . . . owned . . . by . . . any insured." (Internal punctuation omitted.) And the Automobile Exclusion does not contain any language limiting or qualifying *who* must be using the insured's automobile when the bodily injury occurs. "Because the words in this contract are plain and obvious, they must be given their literal meaning and no new terms can be inserted." *Wilbanks v. Mai*, 232 Ga. App. 198, 199 (501 SE2d 513) (1998). "Where the

7

contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written[.]" (Citation and punctuation omitted.) *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 719 (784 SE2d 422) (2016). Accordingly, based on the unambiguous language of the Automobile Exclusion, the CGL Policy does not provide coverage where the bodily injury arose out of use of the insured's automobile, regardless of whether the automobile was used by the insured or someone else. See *Strickland v. Auto-Owners Ins. Co.*, 273 Ga. App. 662, 666 (2) (615 SE2d 808) (2005) (concluding, in case involving the identical automobile exclusion, that the language of the exclusion was "clear" and applied broadly to automobile accidents involving the insured's equipment or drivers); *Grain Dealers Mut. Ins. Co. v. Pat's Rentals*, 228 Ga. App. 854, 855-856 (a) (492 SE2d 702) (1997) (concluding that the identical automobile exclusion was "clear and unambiguous" and applied to the "negligent operation and use of the motor vehicle of the insured by its employee for general and special damages"), rev'd in part on other grounds by 269 Ga. 691 (505 SE2d 729) (1998). See also *McKeel v. Auto-Owners Ins. Co.*, No. CV 413-211, 2015 U.S. Dist. LEXIS 36924, at *7, 2015 WL 1333998, at *3 (S.D. Ga. Mar. 24, 2015) (determining in case involving the identical automobile exclusion that "[b]ased on

[its] clear and unambiguous language, the policy does not provide coverage for any bodily injury that is based on the use of a vehicle operated by an insured").[3]

Irish, however, argues that the absence of a serial comma[4] in the series "the ownership, maintenance, use or entrustment to others" creates an ambiguity in the Automobile Exclusion that should be construed in her favor. See *Sharma*, 361 Ga. App. at 695 (reciting that when an ambiguity in an insurance contract cannot be

---

[3] As reflected in the cases cited above, the language of the Automobile Exclusion is not unique to the CGL Policy. According to one pertinent treatise, language identical to that found in the Automobile Exclusion is "often included in a [commercial general liability] policy to avoid overlapping coverage with an automobile insurance policy." J. Stephen Berry, Georgia Property & Liability Insurance Law § 5:17 (August 2023 update). See generally 9A Couch on Insurance § 129:32 (November 2023 update) (noting that "commercial general liability policies typically exclude auto coverage"); *Crider v. Zurich Ins. Co.*, 222 Ga. App. 177, 179 (2) (474 SE2d 89) (1996) (explaining that "[g]eneral liability policies are purchased primarily to provide coverage for incidents other than those covered under automobile liability policies"). Accord *Strickland*, 273 Ga. App. at 664 (1) (noting that under the standard practice of the trucking industry, where the insured trucking company purchases separate commercial general liability insurance and automobile insurance policies, the general expectation of the insured and insureds is "that there would be two policies of insurance without overlapping coverage") (citation and punctuation omitted).

[4] "[T]he serial comma is the comma used before the conjunction joining the final term in a series." (Citation omitted.) *Christian v. Christian*, 300 Ga. 263, 265 (2), n. 2 (794 SE2d 51) (2016). See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 165 (2012) (explaining that the "serial comma" is "the comma after the penultimate item in a series just before the conjunction (a, b, and c)").

resolved, the contract "will be strictly construed against the insurer as the drafter and in favor of the insured") (citation and punctuation omitted). Specifically, she asserts that, without a comma between "use" and "or entrustment," the Automobile Exclusion lacks clarity, and one reasonable construction of the Exclusion is that it excludes coverage only when the insured's automobile is used by or entrusted to someone else. Put another way, Irish maintains that in the absence of a comma between "use" and "or entrustment," the prepositional phrase "to others" that follows "entrustment" reasonably can be construed as modifying both "use" and "entrustment." Irish therefore asserts that the Automobile Exclusion reasonably can be interpreted as not applying where the insured's automobile is used *by the insured*.

Irish's argument is unpersuasive. The absence of a serial comma in a series carries little weight where, as here, the interpretation that is advanced otherwise conflicts with well-recognized rules of grammar and with standard English usage. See *Christian v. Christian*, 300 Ga. 263, 265-266 (2) (794 SE2d 51) (2016) (rejecting interpretation of contract that emphasized the lack of a serial comma, where the interpretation otherwise was implausible and not supported by the English language). See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal

10

Texts 166 (2012) (noting that "although the better practice is to use the serial comma, courts should not rely much if any on its omission"). As our Supreme Court has emphasized, "contractual terms are construed according to their usual and common signification, and in construing contracts, the rules of grammatical construction usually govern." (Citations, punctuation, and footnote omitted.) *L & B Constr. Co. v. Ragan Enterprises*, 267 Ga. 809, 813 (482 SE2d 279) (1997). See OCGA § 13-2-2 (6) ("The rules of grammatical construction usually govern [in the interpretation of contracts]."). Under one such rule, the rule of the last antecedent, "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." *Deal v. Coleman*, 294 Ga. 170, 174 (1) (a) (751 SE2d 337) (2013), quoting 2A Singer, Statutes and Statutory Construction § 47:33, p. 369 (6th ed. 2000). In the Automobile Exclusion, the limiting phrase "to others" immediately follows the word "entrustment," and under the last antecedent rule, the limiting phrase is reasonably understood to refer to that word and no others. See id. Irish's proposed construction of the Automobile Exclusion, however, ignores the rule of the last antecedent. See *Key v. Ga. Dept. of Administrative Svcs.*, 340 Ga. App. 534, 537 (1) (b)

11

(798 SE2d 37) (2017) (rejecting appellant's construction of contract that ignored the rule of the last antecedent).

"[I]t is true that the rule of the last antecedent is not an absolute and can assuredly be overcome by other indicia of meaning." (Citation and punctuation omitted.) *OB-GYN Assocs. v. Brown*, 357 Ga. App. 655, 659 (1) (849 SE2d 257) (2020). But there is no contrary indicia of meaning in the Automobile Exclusion that suggests that the limiting phrase "to others" should be construed as also modifying "use." Indeed, the phrase "use . . . to others" would be non-idiomatic, and we must avoid constructions of an insurance contract that are strained and conflict with standard English usage. See *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 719, 721 (784 SE2d 422) (2016) (noting that courts should avoid a "strained construction" of an insurance policy, that "[w]ords used in [a] policy are given their usual and common meaning," and that "the policy should be read as a layman would read it") (citations and punctuation omitted); *Kushner v. Southern Adventist Health & Hosp. Sys.*, 151 Ga. App. 425, 427 (1) (260 SE2d 381) (1979) (rejecting construction of contractual provision that would be "unreasonable and unnatural"). Moreover, given that the word "to" immediately follows the word "entrustment" in the Automobile

Exclusion, "to" can only be reasonably construed as a "function word . . . to indicate the receiver of an action or the one for which something is done,"[5] and thus its pairing with the word "use" would be nonsensical in this context. Instead, for Irish's proposed construction to make grammatical sense and comport with standard English usage, the word "by" would need to be inserted after the word "use," so that the pertinent phrase would read "arising out of the . . . use *by* or entrustment to others," but that would require us "to rewrite or revise the contract under the guise of construing it, which, of course, we are not at liberty to do." (Citation and punctuation omitted.) *Brazeal v. Newpoint Media Group*, 331 Ga. App. 49, 56-57 (769 SE2d 763) (2015). See OCGA § 13-2-2 (6) (specifying that "words may be supplied" to a contract "[i]n extreme cases of ambiguity, where the instrument as it stands is without meaning"); *Carrier Corp. v. Rollins, Inc.*, 316 Ga. App. 630, 635 (2) (730 SE2d 103) (2012) ("Where a contract's terms are plain and unambiguous, we are precluded from inserting new terms or provisions."). Hence, contrary to Irish's assertion, the limiting phrase "to others" can only be reasonably and naturally read as modifying "entrustment." Cf. *Cajun Contractors v. Peachtree Property Sub, LLC*, 360 Ga. App.

_____

[5] Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/to (website last visited April 18, 2024).

390, 414 (3) (a) (861 SE2d 222) (2021) (concluding that limiting phrase applied to both antecedents "based on the separation of the [limiting phrase] from both antecedents by a comma").

Lastly, Irish emphasizes that the CGL Policy contains an excess insurance provision that states in part:

> This insurance is excess over[ ] . . . [a]ny of the other insurance, whether primary, excess, contingent or on any other basis[ ] . . . [i]f the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to [the Automobile Exclusion]."

(the "Excess Insurance Provision"). Irish asserts that inclusion of the Excess Insurance Provision in the CGL Policy demonstrates that there must be some automobile-related claims that are not subject to the Automobile Exclusion and that are covered by the CGL Policy, and she maintains that the Excess Insurance Provision therefore supports her narrow construction of the "use" language in the Automobile Exclusion.

Irish's reliance on the Excess Insurance Provision is misplaced. Notably, the Automobile Exclusion expressly sets out several exceptions to its application,[6] and the Excess Insurance Provision is most reasonably and naturally construed as referring to those enumerated circumstances. See *American Strategic Ins. Corp. v. Helm*, 327 Ga. App. 482, 487 (759 SE2d 563) (2014) (noting that under the rules of construction, "each provision [of an insurance policy] is to be . . . interpreted so as to harmonize

---

[6] The Automobile Exclusion provides in relevant part:
[The Automobile Exclusion] does not apply to:
(1) A watercraft while ashore on premises you own or rent;
(2) A watercraft you do not own that is:
    (a) Less than 26 feet long; and
    (b) Not being used to carry persons or property for a charge;
(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;
(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or
(5) "Bodily injury" or "property damage" arising out of:
    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or
    (b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

with the others"). Thus, the Excess Insurance Provision offers no support for Irish's narrow reading of the Automobile Exclusion as applying only when the insured's automobile is used by someone else.

For all of the preceding reasons, we conclude that because William's bodily injuries arose out of the use of the insured's (i.e., Jesperson's) automobile, the Automobile Exclusion excluded coverage under the CGL Policy for the automobile accident. Therefore, Irish's claims failed as a matter of law, and the trial court committed no error in granting Nationwide's motion for judgment on the pleadings.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*